IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BRUCE CLARRY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 04-CV-4167-JPG |
| ) | |
| DENNIS G. HATCH, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

This matter comes before the Court on Defendant Dennis Hatch's Motion to Dismiss Equitable Claim (Doc. 42) and Defendants Edward Eytalis and Nova Clarry's joint Motion for the Court to Abstain from Jurisdiction (Doc. 47). Plaintiff has responded to these motions (Docs. 50, 49). For the following reasons, Defendant Hatch's motion will be **GRANTED** and Eytalis and Clarry's motion will be **DENIED**.

Plaintiff Bruce Clarry is a litigant in a support and child custody action pending before Illinois Circuit Judge Dennis Hatch. Plaintiff was, to say the least, quite unhappy with the course of progress in the state court litigation. Accordingly, Plaintiff filed this federal lawsuit, *pro se*, on August 30, 2004. In his original complaint, Plaintiff sought damages for unspecified violations of 42 U.S.C. § 2000d for racial discrimination. Plaintiff did not provide a basis for his claims in his complaint, so the Court ordered him to allege the underlying facts giving rise to his claim (Doc. 17). In response to the Court's Order, Plaintiff filed an amended complaint on December 27, 2004 (Doc. 18). In that complaint Plaintiff (an African-American man) alleges Hatch (who is white), racially discriminated against him by, among other things, ignoring his motions, revoking his visitation with

-1-

his children without just cause, terminating his parental rights, denying him reasonable visitation with his children, ignoring evidence in his case, denying his discovery, interfering with his attorney-client relationship, and disregarding Illinois child support guidelines. Plaintiff claims defendants Eytalis and Clarry (Plaintiff's ex-wife) discriminated against him by depriving him of his income and his rights as a parent. Though his argument against Eytalis is unclear, he seems to claim Eytalis violated his rights because he knew Hatch was a racist, and used this knowledge to his advantage in the state court proceedings.

Defendants Twine and Hatch filed a motion to dismiss the amended complaint on January 6, 2005 (Doc. 19) and Eytalis and Clarry filed their motion to dismiss on February 1, 2005 (Doc. 22). Subsequently, Plaintiff filed a Motion Requesting Hearing for Intervention (Doc. 26). In ruling on Defendants' motions (Doc. 19, 22), the Court dismissed Plaintiff's claim for damages against Hatch and construed his Motion Requesting Hearing for Intervention as a supplement to his amended complaint (Doc. 33). Specifically, the Court held that Plaintiff's motion supplemented his amended complaint by adding an equitable claim for injunctive relief against Hatch. In the same order, the Court dismissed all claims against Defendant Twine, and denied Eytalis and Clarry's motion. Hatch now claims this Court should dismiss the equitable claim against him for want of equity. Eytalis and Clarry argue the Court should abstain under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976) and *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).

The Court will first address the question of whether Plaintiff is entitled to equitable relief. To obtain injunctive relief, a plaintiff must show that he is without an adequate legal remedy and that an irreparable injury will result if the relief requested is not granted. *O'Shea v. Littleton*, 414

U.S. 488, 499 (1974). Of course, whether Plaintiff is entitled to equitable relief in this case is more complicated because he requests this Court to enjoin ongoing proceedings in state court. When a party asks a federal court to enjoin state court proceedings, a great many other considerations come into play. The Supreme Court has dealt with such issues on a number of occasions. *See, e.g, Pulliam v. Allen*, 466 U.S. 522 (1984); *O'Shea,* 414 U.S. at 488; *Younger v. Harris*, 401 U.S. 37 (1971). A review of these cases makes it clear that federal intervention into state proceedings should be limited to the most extraordinary cases. The Supreme Court has urged caution and restraint in this area because intervention under the circumstances suggested in this case would be an affront to state sovereignty and federalism.

In *Pulliam*, the Supreme Court addressed whether the doctrine of judicial immunity barred an award of injunctive relief against a state judge under 42 U.S.C. § 1983. *Pulliam*, 466 U.S. at 528. Though the Court concluded that judicial immunity did not bar injunctive relief against state judges in 1983 actions, its analysis strongly suggests a dismissal in this case. *See id. Pulliam* counsels restraint on the part of federal courts in these situations for reasons of comity and federalism. *Id*. at 539. In order to have an effective judicial system, judges must be able to operate without fear that their decisions will subject them to litigation in the federal system by those who are unhappy with their decisions. *Id.* at 537-38. Not only does such litigation have the potential to undermine the independence of the judicial system, it can put district courts in the undesirable role of playing supervisor of state court proceedings. *See id.* at 539. More importantly, frequent intervention would be an affront to state sovereignly itself. *See id*. Even in the face of these serious structural and administrative concerns, the Court was unwilling to find the doctrine of judicial immunity a bar to injunctive relief against state judges. *Id*. An important, if not crucial factor in this determination,

was the Court's unwillingness to deprive federal judges of the ability to act in "situations where . . . relief is constitutionally required and necessary to prevent irreparable harm." *Id*. at 540.  The circumstances where intervention might be necessary are the kind that prompted enactment of § 1983 in the first place:  where "state courts were being used to harass and injure individuals, either because the state courts were powerless to stop deprivations or were in league with those who were bent upon abrogation of federally protected rights." *Id*. (quoting *Mitchum v. Foster*, 407 U.S. 225, 240 (1972)). Today, however, "[i]t no longer is proper to assume that a state court will not act to prevent a federal constitutional deprivation or that a state judge will be implicated in that deprivation." *Pulliam*, 466 U.S. at 541.  The Court was convinced that in most cases, traditional hurdles to obtaining injunctive relief would mitigate these dangers. *Id.* at 537-38. The hurdles are higher in these cases.  When injunctive relief is sought against a state court judge a showing of irreparable injury is insufficient "unless it is both great and immediate." *Id*. at 537 n.17 (quoting *Younger*, 401 U.S at 46).

The Seventh Circuit expanded on these themes in *Hoover v. Wagner*, 47 F.3d 845 (7th Cir. 1995).  There, anti-abortion activists sought a declaration that an injunction issued by a state court judge was vague, over broad, and in violation of their free speech rights – essentially, an injunction. *Id*. at 846.  The court denied the injunction for a number of reasons.  Chief among them was  the very real concern that an injunction under the circumstances would have been an affront to comity and state sovereignty. *Id*. at 850-51.  Another concern was the possibility that state court judges could be subjected to criminal contempt proceedings in federal courts as a byproduct of federal intervention. *Id.* at 851.  Again, given these considerations the court reiterated that federal intervention should be reserved for "really extraordinary causes." *Id*. (quoting *Pulliam*, 466 U.S.

at 851).  *Hoover* clearly counsels restraint here.  The Court also notes that § 1983 was amended in 1996 in a manner directly relevant here.  The amendment provides "that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."  42 U.S.C. § 1983.  Plaintiff's claims against Judge Hatch are based upon his rulings or failures to rule, which were allegedly motivated by unlawful discriminatory racial animus.  Certainly these are acts and omissions taken in Hatch's judicial capacity which would come under the scope of the amendment.  However, as Plaintiff is proceeding *pro se*, the Court will assume that declaratory relief is unavailable in this case and will proceed to address this issue.

In the present case, Plaintiff would have this court enjoin further proceedings in front of Judge Hatch and transfer the action to a location where venue does not lie.  A review of the record suggests that the intervention requested is inappropriate.  First, Plaintiff has failed to make the requisite showing of entitlement to injunctive relief.  He is not without an adequate remedy at law as he can appeal those decisions which he believes to be erroneous and can bring a motion to seek relief from judgment under  735 ILCS 5.2-1401.  *See O'Shea*, 414 U.S. at 502.  Further, Plaintiff has failed to demonstrate that the risk of injury to him is "great and immediate."  Plaintiff's claims of racial discrimination are founded on adverse rulings by Judge Hatch.  Plaintiff has not provided any other basis for the relief requested.  Such allegations, without more, do not convince this Court that it should intervene in this case. Though such allegations may be sufficient to get past an ordinary motion to dismiss, they are insufficient to outweigh the considerations of comity and federalism that strongly counsel against the requested intervention.  The Court sees no good reason

why Plaintiff's concerns should not be addressed at the state level. Accordingly, Plaintiff's remaining claim against Hatch is **DISMISSED** for want of equity.

Eytalis and Clarry request a dismissal of this action under *Colorado River* and *Burford*. Unfortunately, their motion is bereft of argument. Apparently, they argue for abstention under *Burford* because of the existence of a comprehensive body of Illinois law "regarding children and families." Of course, this by itself is insufficient for *Burford* abstention. The *Burford* doctrine requires a court to abstain when the case "depends on the resolution of unsettled questions of state law within the competence of an administrative agency." *Nelson v. Murphy*, 44 F.3d 497, 500 (7th Cir. 1995). Eytalis and Clarry have not shown how any ruling in this case would require the Court to decide unsettled questions of state law. *Burford* abstention here is inappropriate. *See id*. at 501.

It is entirely unclear why Eytalis and Clarry think this action should be dismissed under *Colorado River*. In that case, the Court reiterated that federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them" and that, generally, "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Colorado River*, 424 U.S. at 817 (internal citations and quotations omitted). However, the Court recognized that a federal court may stay or dismiss a suit when similar litigation is pending in state court, when doing so would "promote 'wise judicial administration.'" *AXA Corp. Solutions v. Underwriters Reinsurance Corp.*, 347 F.3d 272, 276 (7th Cir. 2003) (quoting *Colorado River*, 424 U.S. at 818). For this to be appropriate, concurrent state and federal lawsuits must be parallel. *TruServ Corp. V. Flegles, Inc.*, 419 F.3d 584, 591-92 (7th Cir. 2005); *AXA*, 347 F.3d at 278. Suits are parallel for these purposes if "substantially the same parties are litigating substantially the same issues simultaneously in two fora." *TruServ*, 419 F.3d at 592 (internal citations and quotations

omitted). This threshold requirement is not met in this case. Plaintiff brought this federal lawsuit to remedy what he believed to be racial discrimination on the part of Clarry and Eytalis. Without regard to the merits of these claims, they are certainly different from the domestic relations disputes that the parties are litigating in state court. Without the benefit of any argument on behalf of Clarry and Eytalis, the Court fails to see why *Colorado River* is appropriate under these circumstances. Eytalis and Clarry's motion to abstain from jurisdiction is therefore **DENIED.**

## CONCLUSION

For the foregoing reasons, Hatch's motion to dismiss is **GRANTED**. Defendants Eytalis and Clarry's motion to abstain from jurisdiction is **DENIED**. The Clerk of the Court is **DIRECTED** to enter judgment accordingly at the end of this case.

**IT IS SO ORDERED**

**DATED: November 28, 2005**

    /s/ J. Phil Gilbert
**J. PHIL GILBERT**
**U.S. District Judge**